Deanna TORRES, Individually, and as
Next Friend of Antoinette Chapa,
A Minor, Appellant,

v.

CITY OF WACO and Sports Supply
Group, Inc., d/b/a BSN Sports,
Appellees.

No. 10–99–332–CV.

Court of Appeals of Texas,
Waco.

June 27, 2001.

Rehearing Overruling Aug.
1 and 15, 2001.

Robert H. Osburn, Robert H. Osburn, P.C., Dallas, James C. Baker, Roberts, Cunningham & Stripling, L.L.P., Dallas, for appellant.

Charles D. Olson, Alfred Mackenzie, Haley & Davis, P.C., Waco, Kent M. Adams, Ellen G. Reynard, Preston D. Hutson, Adams & Coffey, P.C., Beaumont, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

Deanna Torres filed suit against the City of Waco (the "City") and Sports Supply Group, Inc., d/b/a BSN Sports ("BSN") for injuries her six-year-old daughter Antoinette Chapa sustained when a volleyball judge's stand manufactured by BSN fell on Chapa while in an after-school program operated by the City. Torres alleged in her original petition that the City is liable because of the negligence of its employees in connection with the judge's stand. She alleged negligence, breach of implied warranty, defective product design, and deceptive trade practices causes of action against BSN. The court granted summary judgment motions filed by the City and BSN without specifying the basis for its rulings.

Torres presents eight issues on appeal. In the first five, she challenges the judgment granted the City, claiming that: (1) the City failed to conclusively establish the affirmative defense of governmental immunity; (2) she raised a material fact issue on the question of whether the City's operation of the after-school program was a proprietary function to which sovereign immunity does not apply; (3) the City failed to conclusively establish that the operation of the after-school program was a recreational activity under chapter 75 of the Civil Practice and Remedies Code; (4) she raised a material fact issue on the question of whether the after-school program was such a recreational activity; and (5) assuming the after-school program is a recreational activity, the City failed to conclusively establish that it did not wantonly, willfully, or with gross negligence cause Chapa's injuries.

Torres's remaining three issues challenge the summary judgment granted BSN. In these issues, she claims that: (1) she presented sufficient evidence on the single ground raised in BSN's no-evidence summary judgment motion to defeat the motion; (2) BSN's no-evidence motion failed to adequately specify any other element on which it was entitled to judgment; and (3) assuming BSN's motion adequately specified other elements, she presented sufficient evidence to defeat the motion on those other elements.

## BACKGROUND

In May 1995, Torres enrolled Chapa in the " 'Fun in the Sun' Summer Camp" program operated by the City at the South Waco Recreational Center. During the summer months, Chapa spent the entire day in the City's care. When school began in the fall, a school bus transported Chapa

to the Center for after-school care. Chapa sustained the injuries sued upon in October 1995 when a volleyball judge's stand at the Center fell on her.

■ Torres filed this suit both individually and as next friend to Chapa. She claimed in her original petition that the City is liable because of the negligence of its employees in connection with the judge's stand. She alleged various acts and omissions by City employees at the Center which proximately caused Chapa's injuries. Torres alleged that BSN designed and manufactured the judge's stand. She asserted in her original petition that BSN is liable under theories of negligence, breach of implied warranty, products liability under sections 402A and 402B of the Restatement (Second) of Torts, and deceptive trade practices.[1]

The City moved for summary judgment on the grounds that: (1) it has governmental immunity from Torres's negligence claim; (2) it had no duty toward Chapa "which would give rise to liability for negligence" because Chapa was engaged in recreational activities when she was injured; and (3) it is not a "person" within the meaning of the DTPA.[2] BSN filed a summary judgment motion claiming that a review of Torres's discovery responses and excerpts from Torres's and Chapa's depositions reveals that no evidence exists that any BSN product caused injury to Chapa or that the judge's stand was defective.

The court granted these motions without specifying the basis for its rulings.

## STANDARD OF REVIEW

To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. See American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Management Co., 690 S.W.2d 546, 548 (Tex.1985). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.1965); Kehler v. Eudaly, 933 S.W.2d 321, 324 (Tex.App.— Fort Worth 1996, writ denied). We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. See American Tobacco, 951 S.W.2d at 425; Nixon, 690 S.W.2d at 548.

A trial court cannot grant summary judgment on a ground not expressly presented in the summary judgment motion. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.1996). "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." Star–Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.1995). We consider only those grounds "the movant actually presented to the trial court" in the motion. Cincinnati

---

1. Torres filed her original petition in August 1996. The City and BSN filed their summary judgment motions in May 1997 and April 1998 respectively. The court heard both motions in June 1998. Torres filed her First Amended Petition three months later. The court granted the summary judgment motions in August 1999. Because Torres did not file her amended petition until well after the summary judgment hearing and because the record does not reflect that the court considered the amended petition when it ruled on the summary judgment motions, we do not consider the allegations of the amended petition in this appeal. Cf. Sosa v. Central Power & Light, 909 S.W.2d 893, 894–95 (Tex.1995) (per curiam).

2. Torres conceded in her summary judgment response that the City cannot be sued for a DTPA violation.

*Life Ins.*, 927 S.W.2d at 625; *Fletcher v. Edwards*, 26 S.W.3d 66, 74 (Tex.App.—Waco 2000, pet. denied).

## THE JUDGMENT FOR THE CITY

Torres avers in her first issue that the City failed to conclusively establish the affirmative defense of governmental immunity. The City responds that it established its entitlement to judgment as a matter of law on its claim of immunity because: (1) Torres did not plead in her original petition that Chapa's injuries were caused by the City's use of tangible personal or real property; and (2) Torres did not raise the issue of governmental versus proprietary function in her response to the City's motion.

## CONDITION OR USE OF TANGIBLE PERSONAL OR REAL PROPERTY

Under the Texas Tort Claims Act, a government entity is liable for personal injuries caused by a condition or use of tangible personal or real property to the same extent a private person would be liable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997) (emphasis added). Torres alleged in her original petition that the City's conduct "involves the use of tangible personal property" which proximately caused Chapa's injuries because the City failed to:

- adequately staff the daycare program;

- use appropriate and safe equipment and tangible personal property;

- adequately secure the judge's stand to prevent the stand from tipping or falling over;

- adequately monitor and supervise the children;

- adequately train the employees of the daycare center;

- adequately monitor the employees; and

- adequately supervise the employees.

■ The third allegation arguably touches upon the manner in which the City used the judge's stand. However, it is similar to "non-use" allegations rejected by the Supreme Court on other occasions.[3] *See, e.g., Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996) (failure to use injectable medication); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994) (failure to provide medication). Accordingly, we conclude that Torres's allegation that Chapa's injuries were proximately caused by the City's failure to adequately secure the judge's stand does not constitute an allegation that the injuries were caused by the City's use of the judge's stand.[4]

■ Nevertheless, when a summary judgment motion is premised on a deficiency in the plaintiff's pleadings, we must review the challenged pleadings *de novo* "taking all allegations, facts, and inferences in the pleadings as true and viewing them in a light most favorable to the pleader." *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *accord Higbie Roth Constr. Co. v. Houston Shell & Concrete*, 1 S.W.3d 808, 811–12 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). When we construe Torres's petition under

---

3. The second allegation is even more similar to those rejected "non-use" allegations. *Cf. Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996); *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex.1994). Thus, it does not constitute an allegation that Chapa's injuries were cause by the City's use of the judge's stand.

4. Torres did not allege that City employees were actively "using" the judge's stand on the occasion in question. *See Barker v. City of Galveston*, 907 S.W.2d 879, 886 n. 6 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

this standard, we construe her allegation that the City's failure to "adequately secure the judge's stand" proximately caused Chapa's injuries as an allegation that the condition of the judge's stand proximately caused her injuries. *See Barker v. City of Galveston*, 907 S.W.2d 879, 886 n. 6 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (construing allegation of negligent use of swings by city as allegation of claim involving condition of tangible personal or real property because plaintiff did not allege that a city employee caused him injury by an employee's use of a swing); *see also Davis v. City of Palestine*, 988 S.W.2d 854, 858 (Tex.App.—Tyler 1999, no pet.) (pleadings must allege *facts* showing that governmental entity's negligence was proximate cause of injury and that negligent conduct involved use or condition of tangible personal or real property); *Cherry v. Texas Dep't of Crim. Justice*, 978 S.W.2d 240, 243 (Tex.App.—Texarkana 1998, no pet.) (same). Torres's response to the City's summary judgment motion lends further support to this construction. In this response, Torres contends that the City is not immune from liability because Chapa's injuries "were caused by the use *or condition* of tangible personal property owned by the defendant City." (emphasis added).

For these reasons, we hold that, even though Torres did not allege that Chapa's injuries were caused by the City's use of the judge's stand, she did allege that the injuries were caused by the condition of the judge's stand. Thus, she alleged a defective condition of tangible personal property actionable under section 101.021(2) of the Tort Claims Act. *See Barker*, 907 S.W.2d at 886 n. 6; TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

## GOVERNMENTAL V. PROPRIETARY FUNCTION

■■■ In light of this holding, the question of whether the City's operation of the after-school program is a governmental or proprietary function is irrelevant to the City's immunity. If the City's operation of the program constitutes a governmental function, then the City is liable under the Tort Claims Act to the same extent as a private entity would be liable for the alleged defective condition.[5] *See Texas River Barges v. City of San Antonio*, 21 S.W.3d 347, 356 (Tex.App.—San Antonio 2000, pet. denied) (existence of liability for tort committed while engaged in governmental function must be analyzed under Tort Claims Act); *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 730 (Tex. App.—Corpus Christi 1994, writ denied) (same); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (Vernon Supp.2001). Conversely, the City has no immunity from liability if its operation of the program constitutes a proprietary function. *See City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex.1997) (citing *Dilley v.. City of Houston*, 148 Tex. 191, 193, 222 S.W.2d 992, 993 (1949)); *Texas River Barges*, 21 S.W.3d at 356; *Herschbach*, 883 S.W.2d at 730; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) (Vernon Supp.2001). In this situation, the City would likewise be liable to the same extent as a private entity. *Id.*

For these reasons, we sustain Torres's first issue in part and overrule it in part.

## RECREATIONAL USE

■■ Torres claims in her third issue that the City failed to conclusively estab-

---

**5.** If the program constitutes a governmental function though, the Tort Claims Act limits the amount of the City's liability to a maxi-

mum of $250,000. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(c) (Vernon Supp.2001).

lish that its operation of the after-school program was a recreational activity under chapter 75 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001–75.004 (Vernon Supp.2001). If the after-school program was a recreational activity within the meaning of the statute, then the City owed to Chapa only the degree of care it would owe a trespasser on the premises. *See id.* §§ 75.002(c)(2), 75.003(e). This standard of care requires that the City not injure Chapa "willfully, wantonly, or through gross negligence."[6] *Texas Utils. Elec. Co. v. Timmons,* 947 S.W.2d 191, 193 (Tex. 1997); *Flye v. City of Waco,* 50 S.W.3d 645, 647, 2001 Tex.App. LEXIS 4160, at *6 (Tex.App.—Waco 2001, no pet. h.).

■ Under the version of chapter 75 applicable to Torres's case, " '[r]ecreation' means an activity such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, and waterskiing and other water sports." Act of May 15, 1989, 71st Leg., R.S., ch. 736, § 1, 1989 Tex. Gen. Laws 3299, 3299 (amended 1997) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)) (hereinafter, "TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)"). As movant, the City bore the burden of establishing as a matter of law that Chapa came to the Center "for recreation." *See Dubois v. Harris County,* 866 S.W.2d 787, 790 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Spencer v. City of Dallas,* 819 S.W.2d 612, 615–16 (Tex.App.—Dallas 1991, no writ).

■ The City relies on the following summary judgment evidence to establish that Chapa came to the Center "for recreation." Torres testified in her deposition

that she enrolled Chapa in a "recreation program" at the Center in the Summer of 1995. She described the Fall 1995 program as "an after-school program." According to Torres, the children in the after-school program "were playing games and doing arts and crafts and that sort of thing." Chapa testified in her deposition that she played games and ate snacks at the Center.

Torres attached a copy of the City's "Standards of Care" for its youth programs to her summary judgment response. These standards provide the following regarding activities in such programs:

14. **Programming**

A. Program employees will attempt to provide activities for each group according to the participants' ages, interests, and abilities. The activities must be appropriate to participants' health, safety, and well-being. The activities also will be flexible and promote the participants' emotional, social, and mental growth.

B. Program employees will attempt to provide indoor and outdoor time periods to include:

(1) alternating active and passive activities,

(2) opportunity for individual and group activities, and

(3) outdoor time each day weather permits.

Indulging every reasonable inference from this evidence and resolving all doubts in Torres's favor, we conclude that the City failed to conclusively establish that Chapa came to the Center "for recreation" within the meaning of section 75.001(3).

6. Section 75.002(a)(2) of the Civil Practice and Remedies Code sets out a virtually identical standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(a)(2) (Vernon Supp.2001). However, this subsection applies only to "[a]n owner, lessee, or occupant of agricultural land . . . ." *Id.*

Although the after-school program had recreational activities as one of its major components, it is equally clear that the scope of the program went far beyond mere "recreation." Accordingly, we sustain Torres's third issue.

In view of our disposition of Torres's first and third issues, we need not address her second, fourth, and fifth issues.

## THE JUDGMENT FOR BSN

Torres asserted negligence, breach of implied warranty, defective product design, and deceptive trade practices causes of action against BSN. BSN filed what it purports to be a "no-evidence" summary judgment motion on all of Torres's claims. BSN alleges in its motion that there is no evidence "that any product manufactured, distributed, and/or sold by [BSN] caused any injury to [Chapa]." BSN further claims in the motion that Torres can produce no evidence of "any defect in a product manufactured by [BSN] and the resulting injury therefrom."

 BSN attached discovery responses and deposition excerpts to support these contentions. However, this Court has determined that it will review a purported "no-evidence" motion for summary judgment accompanied by supporting evidence under the traditional standard of review for summary judgments.[7] *See Grimes v. Andrews*, 997 S.W.2d 877, 880 n. 1 (Tex.App.—Waco 1999, no pet.); *see also Crow v. Rockett Special Util. Dist.*, 17

S.W.3d 320, 328 (Tex.App.—Waco 2000, pet. denied); *Ethridge v. Hamilton County Elec. Coop. Ass'n*, 995 S.W.2d 292, 295 (Tex.App.—Waco 1999, no pet.).

 To prevail in a defective product design suit, the plaintiff must establish:

- the product was defectively designed when sold;
- the product was unreasonably dangerous (weighing the risk and utility) to the user;
- the product reached the user without substantial change in the condition in which it was sold;
- the defective and unreasonably dangerous condition of the product caused physical harm to the user;
- a safer alternative design existed at the time of manufacture which was economically and technologically feasible; and
- the defect was a producing cause of injury.

*See Allen v. W.A. Virnau & Sons, Inc.*, 28 S.W.3d 226, 232 (Tex.App.—Beaumont 2000, pet. denied); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 306 (Tex.App.—Houston [1st Dist.] 1999, pet. denied); *accord Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256–57 (Tex.1999).

 Torres contends in her sixth issue that she presented sufficient evidence to raise a fact issue on the element of causation.[8] She alleges in her seventh issue that BSN's motion does not adequately purport to raise both types of summary judgment claims.

---

**7.** We have concluded that both traditional and "no-evidence" summary judgment claims can be raised in a single pleading so long as the pleading sufficiently segregates the traditional claims from the no-evidence claims. *See Fletcher v. Edwards*, 26 S.W.3d 66, 72 (Tex.App.—Waco 2000, pet. denied); *accord Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 568 (Tex.App.—Eastland 2000, pet. denied); *Grant v. Southwestern Elec. Power Co.*, 20 S.W.3d 764, 768 (Tex.App.—Texarkana 2000, pet. granted). BSN's motion does not

**8.** Torres must establish that a defect in the judge's stand was a producing cause of Chapa's injuries to recover under any of her causes of actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 82.001(2), 82.005(a)(2) (Vernon 1997); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 & n. 14 (Tex.1999).

specify any other element on which it is entitled to judgment. She claims in her eighth issue that, assuming BSN's motion adequately specifies other elements, she presented sufficient evidence to raise a fact issue on those other elements.

■ BSN asserts in reply to Torres's seventh issue that its motion challenges the elements of defective design and producing cause. In Torres's response to BSN's motion, she relied on the report of a civil engineer concerning alleged defects in the design of the judge's stand and producing cause. She further relied on the opinions of a neurologist as evidence that the incident caused injury to Chapa. Thus, Torres's response indicates that she construed BSN's motion to challenge the elements of causation and defective design. Because Torres provided evidence responsive to the elements BSN claims that its motion challenges and because she did not object to the specificity of BSN's motion in the trial court, we overrule her seventh issue. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 117 (Tex.App.—Waco 1999, no pet.); *Porterfield v. Galen Hosp. Corp.*, 948 S.W.2d 916, 920 (Tex.App.—San Antonio 1997, writ denied).

■ BSN claims in its response to Torres's eighth issue that the expert report offered by Torres to show evidence of defective design does not constitute competent summary judgment evidence because it is conclusory in nature.[9] Settled case law establishes that an expert's conclusory opinion does not suffice to raise a fact issue in response to a summary judgment motion. *See Murillo v. Garza*, 904 S.W.2d 688, 692 (Tex.App.—San Antonio

1995, writ denied); *Jordan v. Geigy Pharmaceuticals*, 848 S.W.2d 176, 179–80 (Tex. App.—Fort Worth 1992, no writ); *see also Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984) (conclusory lay testimony does not raise fact issue); *Augusta Court Co-Owners' Ass'n v. Levin, Roth & Kasner, P.C.*, 971 S.W.2d 119, 126 (Tex.App.—Houston [14th Dist.] 1998, pet. denied) (same). For expert opinion to constitute competent, non-conclusory summary judgment evidence, "the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999). Stated another way, competent expert testimony "states the underlying facts and relates an objective conclusion." *Geick v. Zigler*, 978 S.W.2d 261, 266 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (quoting *Beatty v. Charles*, 936 S.W.2d 28, 31 (Tex.App.—San Antonio 1996, no writ); *see also* TEX. R. EVID. 705(c).

Civil engineer Steve Irwin provided the report at issue. Irwin stated in the first paragraph of the report:

> Investigation into the referenced matter has revealed that a *BSN Sports Judges Stand* fell onto Ms. Torres causing bodily injury. Two things are immediately obvious. First, play ground or play room equipment should not be so designed as to fall during use. Second, equipment that is placed in such areas should be either secured or guarded from use by those not familiar with its dangers.

He opined that the judge's stand "could have been designed with securing devices in place. Such devices would keep the stand from toppling ...." He then re-

---

9. BSN did not raise this objection in the trial court. Nevertheless, an objection to the conclusory nature of summary judgment evidence is an objection to the substance of the evidence which may be raised for the first time on appeal. *See Crow v. Rockett Special Util. Dist.*, 17 S.W.3d 320, 324 (Tex.App.—Waco 2000, pet. denied).

viewed a 1995 BSN catalog and identified four other BSN products depicted in the catalog which had the type of securing devices he contemplated. He concluded:

> Any of these device options all ready [sic] in use by BSN Sports would reduce or eliminate the potential for toppling the Judge's Stand. If the design options were not in place, the equipment should have [been] stored or supervised by those using the equipment.

> If the Judge's Stand was outfitted with a securing device by the manufacturer, or secured or stored properly by the City, the injuries to Deanna Torres would not have happened.

BSN contends that Irwin's report is inadequate because he: (1) offered no evidence concerning "the underlying facts" about the incident in question; (2) "neither identified the reasoning behind his advocacy of the alternative designs, nor discussed their effects upon the ultimate utility of the product"; and (3) "offered no factual support for his conclusions that the 'defective design' served as the producing cause of [Chapa's] injuries."

■ The second of BSN's contentions goes to the "safer alternative design" element of Torres's products liability claim. *See Allen*, 28 S.W.3d at 232; *Jaimes*, 21 S.W.3d at 306. BSN did not challenge this element of Torres's claim in its summary judgment motion. Accordingly, we conclude that BSN cannot now complain that Irwin's report is inadequate because it offers no competent evidence of a safer alternative design. *Cf. Fletcher*, 26 S.W.3d at 74 ("We consider only those grounds 'the movant actually presented to the trial court' in the motion") (quoting *Cincinnati Life Ins.*, 927 S.W.2d at 625). In other words, Torres did not need to proffer competent summary judgment evidence on an issue not raised in BSN's motion.

BSN's first contention goes to Irwin's understanding of the facts surrounding Chapa's injuries. BSN notes that Irwin mistakenly identified Torres as the injured party in his report. Torres replies that Irwin understood the factual basis of the incident because he stated in the affidavit accompanying his report that the report concerns "the injuries suffered by the minor child Antoinette Chapa." Regardless of the identity of the injured party, Irwin's report clearly evinces his understanding that a child was injured when a BSN judge's stand fell on her. His report likewise demonstrates his understanding that the stand was free-standing at the time of the incident (*i.e.*, not "secured"). Accordingly, we conclude that Irwin's report adequately states the underlying facts.

■ BSN's final challenge to Irwin's report concerns the factual basis for his conclusion that the alleged defective condition of the judge's stand was the producing cause of Chapa's injuries. In the products liability context, "[a] producing cause is 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any.'" *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995) (quoting *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995); *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975); *Ford Motor Co. v. Cammack*, 999 S.W.2d 1, 7 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). "There can be more than one producing cause." *Haynes & Boone*, 896 S.W.2d at 182 (quoting *Rourke*, 530 S.W.2d at 801); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 635 (Tex.App.—Waco 2000, pet. denied).

■ Irwin identified four BSN products with stabilizing or securing features which the judge's stand did not have. Irwin concluded that the incident occurred because the judge's stand was not

equipped with any of these features (defective design) and because the City did not properly secure or store the judge's stand (premise defect). Irwin sufficiently stated the underlying facts and connected those facts to his conclusions regarding the design of the judge's stand and the City's failure to properly secure or store it. Accordingly, his report is competent evidence that the design of the judge's stand was a "contributing cause" to Chapa's injuries. *See Union Pump,* 898 S.W.2d at 775; *Ford Motor,* 999 S.W.2d at 7.

For these reasons, we conclude that Torres presented sufficient, competent evidence to raise an issue of material fact on the elements of defective design and producing cause. Accordingly, BSN failed to establish its entitlement to judgment as a matter of law on these elements. Therefore, the court erred in granting BSN's motion for summary judgment. Thus, we sustain Torres's sixth and eighth issues.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.