Affirmed and Opinion filed October 3, 2002









Affirmed and Opinion filed October 3, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00203-CV

____________

 

SHARON L. RUSSO, Appellant

 

V.

 

SMITH INTERNATIONAL, INC.,
Appellee

 



 

On
Appeal from the 61st District Court

Harris County, Texas

Trial
Court Cause No. 99-40124

 



 

O
P I N I O N

This
is an employment discrimination case. 
Appellant Sharon Russo (ARusso@) brought suit against Smith International, Inc. (ASmith@),
alleging age‑related employment discrimination in violation of the Texas
Commission on Human Rights Act (ATCHRA@).[1]  Without specifying its grounds, the trial
court granted summary judgment in favor of Smith.  We affirm.








I.  Background

Smith,
an oil field services and equipment manufacturing company, consists of several
business units.  In 1998, Smith merged
two of its drilling bit units, Smith GeoDiamond and Smith Tool, creating the  newly consolidated business entity Smith
Bits.[2]  At the time of the merger, the oilfield
service business faced a decline and Smith suffered losses to its business as a
result of the industry-wide downturn.

Shortly
after the merger, Smith appointed Michael Van Hook to the position of Area
Manager and Wayne Miller to Houston Division District Manager.  At the instruction of Van Hook, Miller
evaluated the job duties and compensation of Smith employees that he supervised
in the Houston District.  Miller included
Russo=s
position and compensation in this review. 
Russo=s job title at the time of her review was Technical Sales
Application Specialist.  She had worked
at Smith since 1977.  According to Smith,
the inquiry revealed a disparity between Russo=s job responsibilities and her title and salary.  In September 1998, Smith eliminated Russo=s
position of Technical Sales Application Specialist and reassigned her to a
lower-paying Well Program Specialist position.








In
the months following Russo=s reassignment, Smith continued to face declining sales and
revenues.  As a result, Smith terminated
Russo and approximately two thousand other employees during a company-wide
force reduction.  Russo was 53 years old
at the time of her termination.  As part
of the reduction in force, Smith assigned Russo=s job responsibilities to various positions, including members
of its existing sales force, a clerk, and the position of Technical Sales
Representative.  John Wolfe, an employee
in his early thirties, filled the Technical Sales Representative position.  Claiming that age discrimination motivated
the demotion and subsequent termination, Russo filed suit alleging that Smith
acted in violation of the TCHRA.  The
trial court granted Smith=s motion for summary judgment.

In
three points of error, Russo contends: (1) the trial court erred in granting
appellee=s
motion for summary judgment; (2) there was evidence that Smith intended to
discriminate against her on the basis of her age; and (3) there was evidence
rebutting Smith=s articulated legitimate and nondiscriminatory reasons for
Russo=s
termination.[3]

We
overrule her points of error.

II.  Standard
of Review

Smith moved for summary judgment under rules 166a and 166a(i)
of the Texas Rules of Civil Procedure.[4]  To prevail on a traditional motion for
summary judgment under rule 166a, the party moving for summary judgment carries
the burden of establishing that no material fact issue exists on the challenged
elements and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a; M.D. Anderson Hosp. and Tumor Inst. v. Willrich,
28 S.W.3d 22, 23 (Tex. 2000).  The Ano-evidence@ motion for summary judgment shifts
the burden of proof to the non-movant to produce evidence raising a genuine
issue of material fact on the contested issue on which the non-movant would
bear the burden of proof at trial.  See
Tex. R. Civ. P. 166a(i).  As this court observed:








Such a motion asserts there is no
evidence of one or more essential elements of claims upon which the opposing
party would have the burden of proof at trial. 
Unlike a movant for traditional summary judgment, a movant for a no‑evidence
summary judgment does not bear the burden of establishing a right to judgment
by proving each claim or defense.  A no‑evidence
summary judgment is essentially a pretrial directed verdict, to which we apply
the same legal sufficiency standard of review.  A no‑evidence summary judgment is
properly granted if the non‑movant fails to produce more than a scintilla
of probative evidence raising a genuine issue of fact as to an essential
element of a claim on which the non‑movant would have the burden of proof
at trial.

Lake Charles Harbor and Terminal Dist. v. Bd. of Trs. of Galveston
Wharves, 62 S.W.3d
237, 241 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (citations
omitted).  To defeat a Ano-evidence@ summary judgment motion, the
non-movant need not marshal its proof but should only identify more than a
scintilla of evidence raising a fact issue on the challenged elements.  See Tex.
R. Civ. P. 166(i) cmt.  A
non-movant puts forth less than a mere scintilla of evidence when that which is
proffered is Aso weak as to do no more than create
a mere surmise or suspicion@ C the effect being that there is no evidence offered.  Hight v. Dublin Veterinary Clinic, 22
S.W.3d 614, 619 (Tex. App.CEastland 2000, pet. denied). 

III. 
DISCUSSION

A.  Texas Law
and the Mcdonnell Douglas Minuet








Like
its federal counterpart, the TCHRA expressly prohibits employment
discrimination with respect to race, color, disability, religion, sex, national
origin, or age. Tex. Lab. Code Ann.
'
21.051.  The Texas Legislature envisioned
that the TCHRA would provide for Athe execution of the policies of Title VII of the Civil Rights
Act of 1964 and its subsequent amendments.@  Id. '
21.001(1); see also Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971) (AWhat
is required by Congress is the removal of artificial, arbitrary, and
unnecessary barriers to employment when the barriers operate invidiously to
discriminate on the basis of racial or other impermissible classification.@)  Accordingly, Texas state courts follow
analogous federal statutes and cases interpreting them to guide our reading of
TCHRA.  See Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 476 (Tex. 2001). 
Section 21.051 of
TCHRA provides:

An employer commits an unlawful employment practice if
because of race, color, disability, religion, sex, national origin, or age the
employer: 

(1) fails or refuses to hire an individual, discharges
an individual, or discriminates in any other manner against an individual in
connection with compensation or the terms, conditions, or privileges of
employment; or 

(2) limits, segregates, or classifies an employee or
applicant for employment in a manner that would deprive or tend to deprive an
individual of any employment opportunity or adversely affect in any other
manner the status of an employee.

Tex. Lab. Code Ann. ' 21.051. 

In
McDonnell Douglas Corp. v. Green, the Supreme Court allocated the burden
of production and ordered the presentation of proof in employment
discrimination cases.  411 U.S. 792, 802B05
(1973).  Texas courts invoke McDonnell
Douglas in employment discrimination cases brought under state law.  See Quantum, 47 S.W.3d at 476; M.D. Anderson Hosp., 28 S.W.3d at 24; Waldmiller v. Cont=l Express, Inc.,
74 S.W.3d 116, 122B23 (Tex.
App.CTexarkana 2002, no pet.).

The
U.S. Supreme Court has summarized the allocation of proof in employment
discrimination cases as follows:

First,
the plaintiff has the burden of proving by the preponderance of the evidence a
prima facie case of discrimination. 
Second, if the plaintiff succeeds in proving the prima facie case, the
burden shifts to the defendant to articulate some legitimate, nondiscriminatory
reason for the employee=s
rejection.  Third, should the defendant
carry this burden, the plaintiff must then have an opportunity to prove by a
preponderance of the evidence that the legitimate reasons offered by the
defendant were not its true reasons, but were a pretext for discrimination.








Texas
Dept. of Cmty. Affairs v. Burdine,
450 U.S. 248, 252B53 (1981) (quotations and citations omitted); see also
Quantum, 47 S.W.3d at 476 (applying McDonnell Douglas in TCHRA age
discrimination case).  Because direct
evidence of discrimination is a rarity in employment cases, Russo puts forth
only circumstantial evidence that Smith violated the TCHRA.  See Tyler v. Union Oil Co. of California,
Nos. 00‑51112, 01‑50479, 2002 WL 1969678, at *12 (5th Cir. Aug 27,
2002) (AThe
McDonnell Douglas evidentiary framework is primarily concerned with the
plaintiff=s initial burden when attempting to prove discrimination by circumstantial
evidence.@)  Thus, without direct
evidence of discrimination, this case merits the McDonnell Douglas Apretext@
analysis.  Quantum, 47 S.W.3d at
476.[5]


B. 
Russo=s Prima
Facie Case








Where,
as here, the plaintiff asserts age discrimination claims based on two separate
and distinct incidents, she must establish a prima facie case for each
independently.[6]
 The establishment of the prima facie case is a
Acondition precedent@ to the pretext analysis.  See Jones v. Union Pac. R.R. Co., No.
01-2038, 2002 WL 31012460, at *5 (7th Cir. Sept. 10, 2002).  We consider separately the 1998 demotion and
the 1999 termination.  Russo need only make a minimal showing to establish her prima
facie case.  See Gold v. Exxon Corp., 960 S.W.2d 378, 382 (Tex. App.CHouston [14th Dist.] 1998, no pet.); see
also Burdine, 450 U.S. at 253 (noting that the plaintiff=s burden at this stage is Anot onerous@).

1.  The Demotion

In employment discrimination cases based on circumstantial
evidence, the plaintiff=s prima facie case relates to the employee=s burden of presenting evidence that
raises an inference of discrimination.  See Swierkiewicz v. Sorema N. A., 122 S.
Ct. 992, 997 (2002).  A prima facie case
of age discrimination requires proof that the plaintiff (1) is a member of a
protected class; (2) was discharged; (3) was qualified for the position from
which she was discharged; and (4) was either replaced by someone outside the
protected class, replaced by someone younger, or was otherwise discharged
because of her age.  See Baker v. Gregg County,
33 S.W.3d 72, 80 (Tex.
App.CTexarkana 2000, pet. dism=d). 

As
Russo was fifty-three years old at the time of her reassignment and subsequent
termination, she clearly falls within the relevant protected class, thereby
meeting the first element of the prima facie case.  See Tex.
Lab. Code Ann. ' 21.101 (limiting protection against age discrimination under
the TCHRA to individuals who are forty years of age or older); cf. 29
U.S.C. '
631(a) (Age Discrimination in Employment Act protects individuals who are at
least forty years of age).  Smith=s
1998 decision to demote Russo constituted an adverse employment action akin to
discharge, as it was a cut in base pay not offset by an increase in some other
form of compensation.  See Williams v.
Bristol‑Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). 
Thus, she meets the second required element.  Because Smith contends Russo limits her
challenge of the summary judgment solely to the 1999 termination, it does not
challenge the elements of her prima facie case on the demotion claim.  From the summary judgment evidence in the
record, we find that the plaintiff met all of the elements of her prima facie
case on the demotion claim.

 








2.  The
Termination Pursuant to a Reduction in Force

Turning
to Russo=s
prima facie case for the reduction in force claim, Russo satisfies the first
element because she remains in the protected class.  We also assume without deciding that her 1999
termination was an adverse employment action for the purposes of her prima facie
case.  Contra LaGrant v. Gulf and
Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir. 1984) (AThe
mere termination of a competent employee when an employer is making cutbacks
due to economic necessity is insufficient to establish a prima facie case
of age discrimination.@) (emphasis added).

Though Russo argues that Wolfe replaced her, Smith contends
it negated the replacement element of Russo=s prima facie case (and
alternatively, that she presents no evidence) because the company redistributed
her duties pursuant to a reorganization and no single, younger employee assumed
a position similar to that which she previously held.  In the context of age discrimination, a
terminated employee is replaced by another person when the terminated employee=s position is filled by that person
and said person is assigned the terminated employee=s former job duties.  See Baker, 33 S.W.3d at 81.  In a similar case, the Texarkana Court of
Appeals wrote:

[A] terminated employee is not replaced by a person
who temporarily assumes the terminated employee=s job
duties or a person who only takes over a part of those duties.  When a terminated employee=s job duties are distributed among other employees
after termination, those employees do not replace the terminated employee.

 

Id. at 81B82.  Smith assigned Russo=s job responsibilities to various
employees, including Wolfe, who took the job of Technical Sales Representative.  On that basis, Smith argues that it has
proven as a matter of law that Russo was not replaced and, alternatively, that
Russo has provided no evidence of replacement.








However, because plaintiffs in reduction in force cases are
laid off and oftentimes unable to prove the replacement element of the McDonnell
Douglass minuet, the Fifth Circuit has modified the test in cases involving
a general reduction in the employer=s workforce.  See Williams v. Gen. Motors Corp., 656
F.2d 120, 127B28 (5th Cir. Unit B Sept. 1981); Amburgey
v. Corhart Refractories Corp., Inc., 936 F.2d 805, 813 (5th Cir. 1991)
(elaborating upon the special Williams prima facie case standard in reduction
in force cases);  Eugene v. Rumsfeld,
168 F. Supp. 2d 655, 668 (S.D. Tex. 2001); compare Rose v. Wells Fargo &
Co., 902 F.2d 1417, 1421 (9th Cir. 1990) (AWe have held that the failure to
prove replacement by a younger employee is >not necessarily fatal= to an age discrimination claim where
the discharge results from a general reduction in the work force due to
business conditions.@).  In such cases, the
fourth prong of the prima facie case is altered to require the plaintiff to
produce Aevidence, circumstantial or direct,
from which a factfinder might reasonably conclude that the employer intended to
discriminate in reaching the decision at issue.@  Williams, 656 F.2d at 129; Eugene,
168 F. Supp. 2d at 668; cf. Brown v. CSC Logic, Inc., 82 F.3d
651, 654 (5th Cir. 1996) (AWe note, however, that the >reduction in force= standard applies only when a company
lays off protected individuals, while retaining younger employees in similar
positions.@) (emphasis in original).  Thus, under this altered
standard, Russo need not necessarily establish the replacement element, as it
appears that she C a protected class employee C was laid off while Wolfe C a younger employee in a similar position C
was retained.








Though not necessarily required by the modified Williams standard,
Russo claims she was replaced by Wolfe, a younger man, and that she was
qualified to perform the duties of a Technical Sales Representative.  Were we to analyze this
case without reference to the Williams standard, the touchstone for
determining whether Russo=s lay‑off might constitute impermissible age
discrimination is the similarity of the jobs held by the protected class
employee and the younger employee.  Burger
v. New York Inst. of Tech., 94 F.3d 830, 833 (2d Cir. 1996) (comparing
duties of non‑protected employees with similar, though not identical, job
functions and titles to those of the protected class employees).  Prior to Russo=s termination, Miller issued a
document to Theiss and Van Hook stating that due to a workforce reduction, the
Houston District would have to eliminate one Well Program Specialist and one
Technical Sales Representative.  The
document then listed the job responsibilities as follows:

Well Program Specialist

1.         Prepare well program to meet District requirements.

2.         Meet customer bit record requests and maintain bit record
file.

3.         Assist other
district office personnel as required.

Technical Sales Representative

1.         Account management of external customers specific to the
Houston District area.

2.         Rig site supervision capability of all products.

3.         Assist in Field sales and service requirements

4.         Presentation of well programs to customers

5.         Coordination and preparation of District well program
requirements.

6.         Meet bit record requests and maintain bit record files.

7.         Coordination and distribution of district well drilling
permits and report.

8.         Produce recommendations for Aoutside
Districts@ program requirements of Houston District customers.

9.         Assist other district office and field personnel as
required.

 








Responsibilities five and six above were noted by Miller in a
January 1999 memorandum as a consolidation of responsibilities resulting from
the work force reduction.  Smith offered evidence that Wolfe not only
assumed Russo=s duties, but also took the responsibilities of Ken Langston,
another terminated employee.  In
addition, the Technical Sales Representative position required experience in
field supervision and the ability to replace vacationing field workers.  Russo did not have such experience.  In his affidavit, Van Hook notes that unlike
Wolfe, Russo had never lived at a rig site and never monitored or supervised
the drilling of a well C attributes he considered important in the 1999 decision
regarding the Technical Sales Representative position, as it included sales and
field support.

However,
as noted above, the burden on the plaintiff at this stage is not onerous.
Considering the relative ease with which a plaintiff meets the prima facie case
under this framework, and coupling that with the Williams exception to
be applied in reduction in force cases, we assume arguendo that Russo
has established the required elements at this stage of the McDonnell Douglas
analysis.  See, e.g., Nichols v. Loral
Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996) (assuming arguendo that
plaintiff terminated pursuant to reduction in force met the prima facie case
required of federal age discrimination case).  We cannot say that Russo has produced no genuine issue of
material fact at this stage, nor can we conclude that she has put forth less
than a mere scintilla of evidence. 
Having met the aforementioned elements, Russo earns a transitory
presumption of discrimination which the employer is now called upon to
rebut.  See Costa v. Desert Palace,
Inc., 299 F.3d 838, 855 (9th Cir. 2002).

C.  Smith=s
Articulated Nondiscriminatory Reasons








As Russo has met the elements of her prima facie case, the
burden now shifts to Smith to articulate legitimate nondiscriminatory reasons
for both Russo=s demotion and termination.  See Quantum, 47 S.W.3d at 477.  The burden is one of production only, not
persuasion.  See Reeves v. Sanderson
Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  In promulgating its nondiscriminatory reason,
the employer quickly and easily rebuts the presumption of discrimination, which
summarily drops from the case.  See
Costa, 299 F.3d at 855; see also Pilditch v. Bd. of Educ. of the City of
Chicago, 3 F.3d 1113, 1117 (7th Cir. 1993) (A[T]he employer need not persuade the
court that he was actually motivated by the reason he gives and the mere
articulation of the reason rebuts the prima facie case and puts the onus back
on the plaintiff to prove pretext.@). 
Smith proffered the following
nondiscriminatory reasons for Russo=s reassignment and her subsequent termination:  (1) Smith eliminated Russo=s
job because of a reorganization brought about by the consolidation of two
business units and reassigned her to a lower-paying position more in line with
her experience; and (2) Smith subsequently terminated Russo=s
employment due to a company-wide reduction in force brought about by declining
sales and revenues.  

Like
the employer defendant in Gallo v. Prudential Residential Servs.,
Smith presented affidavits accompanying its motion establishing that when it
terminated Russo the company faced great economic difficulties and that a
reduction in force was necessary to meet its budgetary goals. 
22 F.3d 1219, 1226 (2d Cir. 1994).  In his affidavit, Theiss remarked upon Smith=s dependence on the level of drilling
activity occurring in the market C when drilling decreases, the need
for personnel decreases.  Theiss noted
that from January 20, 1998 through January 21, 1999, fifty-three employees were
laid off pursuant to a company-wide reduction in force, and that twenty-eight
of these employees were laid off in the Smiths Bits unit in January of 1999
alone.  So hampered by decline was the
industry during this period that Smith laid off more than 2000 employees
internationally.  In his affidavit, Van
Hook stated that during his tenure at Smith he had seen several reductions in
force brought about by similar declines in drilling and rig activity, which in
turn affected Smith=s employment needs. 
Van Hook noted that by January 1999 sales in the Houston District had
dropped more than 45 percent and profits more than 198 percent.  He stated that in all, the industry downturn
required him to reduce his Texas Gulf Coast area personnel by twenty percent.

A reduction in force is a legitimate, nondiscriminatory
reason for an employee=s termination. Nichols, 81 F.3d at 41.  Smith=s
production of these legitimate nondiscriminatory reason eliminates the
presumption of discrimination created by the plaintiff=s
prima facie showing.  Burdine, 450
U.S. at 254; Quantum, 47 S.W.3d at 477. 
Under the McDonnell Douglas framework, the burden now shifts back
to Russo to call into question Smith=s articulated reasons.

 








D.  Establishing
Pretext for Discrimination

In its unanimous opinion in Reeves, the U.S. Supreme
Court clarified that when the plaintiff offers proof that the employer=s articulated reasons are false, the
dispute must then be submitted to a jury to decide.  530 U.S. at 144B46. 
Under Reeves, the plaintiff shows pretext by introducing evidence
proving the reasons stated by the employer, were not its true reasons, but were
a pretext for discrimination or that said reasons were unworthy of
credence.  530 U.S. at 143.  In the summary judgment setting, however, the
plaintiff need not prove pretext but merely establish a genuine issue of material
fact on the matter.  See Amburgey,
936 F.2d at 813.  Summary judgment will
be improper if the plaintiff makes a prima facie case and produces sufficient
evidence for a jury to disbelieve the employer=s stated reason for discharge.  See Reeves, 530 U.S. at
146B48. 
However, the Court did state that Aan employer would be entitled to
judgment as a matter of law if the record conclusively revealed some other,
nondiscriminatory reason for the employer=s decision, or if the plaintiff
created only a weak issue of fact as to whether the employer=s reason was untrue and there was
abundant and uncontroverted independent evidence that no discrimination had
occurred.@ 
Id. at 148.  Thus, we
analyze this step of the McDonnell Douglas inquiry in light of Reeves.

1.  The Demotion

Smith
claims it eliminated Russo=s job as a Technical Sales Application Specialist and
subsequently reassigned her because of a company-wide reorganization brought
about by the consolidation of two business units into a singular entity.  In so doing, Smith claims, it created a
position that reflected a title, salary, and grade level in line with Russo=s
duties of sales support.  An e-mail from
Miller to Van Hook dated September 9, 1998, indicates that Smith=s
intention was to reorganize by reassigning Russo=s supervisory and other duties to different groups within the
merged organization.








Russo
offers Theiss=s notes taken during the September 11, 1998, meeting at which
the decision to offer Russo the Well Program Specialist position was made.  Under Russo=s name, Theiss wrote: AHired 9/9/77, 21 yrs.@ and AMarried, 53 yrs.@  Next to Wolfe=s
name, Theiss noted that Wolfe was approximately thirty-years-old.  The notes mention other employees, including
Jerry Star (listed as sixty-six years old), Davey Cruzan (listed as
approximately thirty years old), and Ryan Mushinski (no age listed).

For
an age‑based comment to be probative of an employer=s
discriminatory intent, it must be direct and unambiguous, allowing a reasonable
jury to conclude without inferences or presumptions that age was an
impermissible factor in the decision to terminate the employee.  See Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993).  The value of such remarks is dependent upon
the content of the remarks and the speaker. 
See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th
Cir. 2000).  As Theiss swore in his
affidavit filed with Smith=s motion for summary judgment, the references to age in the
notes are consistent with a human resources manager=s role in ensuring that employment
decisions conform with the law.  Theiss=s references to age, standing alone,
do not support an inference of discrimination. 
Compare Russell, 235 F.3d at 226 (finding remarks constituted
appropriate circumstantial evidence of age discrimination because of content
indicating age animus).  Because a jury
reading Theiss=s notes would be required to presume
age factored into the termination decision, the notes are no evidence of
discriminatory intent.

Although Russo makes a prima facie case, she did not produce
sufficient evidence for a jury to disbelieve the employer=s stated reason for discharge.  Likewise,
she has failed to raise
a genuine issue of material fact on the issue. 
Accordingly, we hold that the trial court did not err in granting
summary judgment as to Russo=s demotion.








2.  The
Termination Pursuant to a Reduction in Force

Although Smith is certainly entitled to reduce its force and
structurally reorganize its operations to maximize efficiency in response to
economic woes or otherwise, an employer may not intentionally discriminate
against an employee because of her age.  Gallo,
22 F.3d at 1225.  Smith offered proof to show it terminated
Russo=s
employment because declining sales mandated a company‑wide reduction of
its workforce.  Its proof indicates its
revenues and profitability are proportional to the level of exploration and
production activity.  From 1997 through
1999, drilling activity declined steeply, forcing Smith to reduce its expenses
and eliminate over 2,000 positions.

To show pretext in a reduction in force case, an employee must
establish that an improper motive Atipped the balance@ in favor of termination.  Krchnavy v. Limagrain Genetics Corp.,
294 F.3d 871, 876 (7th Cir. 2002). 
Bald assertions of impermissible age discrimination are insufficient to
establish pretext.  See Amburgey,
936 F.2d at 814.  Russo failed to provide
any evidence from which one could reasonably conclude the reduction in force
was anything but bona-fide.  She relies
on much of the same evidence at this stage as she did for the demotion
claim:  (1) the e-mails sent among
managers outlining the decisions made regarding her employment; (2) Theiss=s notes; (3) a memo Russo received in
September offering her a choice between reassignment or a severance package;
and (4) her subjective belief that she was qualified to perform the job of
Technical Sales Representative.  None of
these documents contain evidence sufficient to rebut the employer=s articulated reason for the
termination, nor do they raise a genuine issue of material fact on the
matter.  We agree with Smith that the
emails do little more than evaluate the reclassifications of Russo and Langston=s positions.  Again, Theiss=s notes are merely an employer=s attempt to ascertain which
employees fall within the protected class. 
Russo=s subjective beliefs are insufficient
to overcome Smith=s summary judgment evidence. 
See M.D. Anderson Hosp., 28 S.W.3d at 24.








Russo also argues that she was more qualified than Wolfe, the
employee she claims replaced her.  In her
brief, Russo claims that Wolfe=s 1999 performance evaluation C when compared to the affidavit of
her own supervisor, David Cudd C illustrate that Wolfe was Aless experienced@ than she.  She does not elaborate upon this claim in her
brief.  Noting that he interfaced weekly
with Russo over a number of years, Cudd deems Russo to be an employee of the Ahighest caliber.@ 
Cudd left the employ of Smith in 1998 and did not mention anything in his
affidavit about the events in 1999.  In
the entirety of his affidavit, Cudd does not mention Wolfe.  Thus, his affidavit is not helpful in
comparing Russo=s qualifications to those of Wolfe C who took the position the year
following Cudd=s departure from the company.  Additionally, Russo=s qualifications as to the position
of Well Program Specialist are not dispositive as to her qualifications for the
position of Technical Sales Representative C the position Wolfe filled.

To rebut Smith=s nondiscriminatory reasons, Russo
must show she was Aclearly better qualified@ than the younger employees who were
retained.  See Nichols, 81 F.3d at
42.  The evidence of relative
qualifications must be more than merely subjective and speculative.  Id. 
It must be specific and comparative in nature.  Bodenheimer, 5 F.3d at 959.  Russo has presented this court only with her
disagreement with Smith=s decision C not evidence that she was more qualified than Wolfe for the
Technical Sales Representative position. 
See Waggoner v. City of
Garland, 987 F.2d 1160, 1165 (5th
Cir. 1993) (AThe ADEA was not intended to be a vehicle for judicial second‑guessing
of business decisions, nor was it intended to transform the courts into
personnel managers.@).








Here, the record supports Smith=s contention that its reduction in
force was necessitated by the downturn in the industry.  In her deposition, even Russo acknowledged
that rig counts were down in 1998, that Smith=s revenues were down, and that these
changes made her job less secure.[7]  Internationally, 2,000 Smith employees lost
their jobs.  Russo failed to rebut Smith=s nondiscriminatory reason for her
termination.  See Anderson v. Taylor
Pub. Co., 13 S.W.3d 56, 59B60 (Tex. App.CDallas 2000, pet. denied); cf. Bowen v. El Paso
Elec. Co., 49 S.W.3d 902, 909B911 (Tex. App.CEl Paso 2001, pet. denied).  As the plaintiff has not produced sufficient
evidence for a jury to disbelieve the employer=s stated reasons, the trial court
properly granted summary judgment in favor of Smith on the termination claim.  See Reeves, 530 U.S. at 148.

III.  CONCLUSION

Russo presented no evidence sufficient to rebut the
legitimate non-discriminatory reasons offered by Smith on both the demotion and
termination claims.  Accordingly, we hold
that the trial court did not err in granting Smith=s motion for summary judgment.  We overrule Russo=s points of error.

The judgment of the trial court is affirmed.

 

 

 

 

/s/        Eva M.
Guzman

Justice

 

 

Judgment rendered and Opinion filed
October 3, 2002.

Panel consists of Justices Yates,
Seymore, and Guzman.

Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]  See Tex. Lab. Code Ann. ' 21.001 et seq. 
Initially, Russo also asserted claims for gender discrimination and
breach of contract.  Russo has abandoned
all but her age‑related claims on appeal.





[2]  For the
purpose of simplicity, we refer to both Smith Bits and Smith International,
Inc. as ASmith.@





[3]  Russo does not
articulate her points of error in the exact verbiage set forth in McDonnell
Douglas Corp. v. Green and its progeny, though it is apparent from her
brief that she attempts to do so by citing the relevant cases and paraphrasing
the particular tests to be employed.  411
U.S. 792, 802B05 (1973).





[4]  Like the
employer defendant in Waldmiller v. Cont=l Express, Inc.,
Smith references both the no-evidence and the traditional summary judgment
rules in its motion without clearly distinguishing between the evidence,
arguments, and authorities supporting each. 
74 S.W.3d 116, 122B23 (Tex. App.CTexarkana
2002, no pet.).  While remarking that the
rules do not prohibit such hybrid motions, the Waldmiller court
cautioned litigants to Afile two separate motions, one containing the
no-evidence summary judgment and one containing the ordinary summary judgment,
or to file one document containing both motions but with the arguments and
authorities for each clearly delineated and separate from one another.@  Id.; see
also Torres v. City of Waco, 51 S.W.3d 814, 822 n.7 (Tex. App.CWaco 2001, no pet.) (AWe have
concluded that both traditional and >no‑evidence= summary judgment claims can be raised in a single
pleading so long as the pleading sufficiently segregates the traditional claims
from the no‑ evidence claims.@)





[5]  Federal courts
allocate the various burdens depending on whether the plaintiff presents direct
or circumstantial evidence of discrimination. 
While courts invoke the Apretext@ model
when the plaintiff presents circumstantial evidence, they use the Amixed motive@ model
when the plaintiff brings forth direct evidence.  When a plaintiff produces direct evidence of
the employer=s discriminatory intent, the employer must then
produce evidence sufficient to show that it would have made the same decision
if illegal bias had played no role in the employment decision.  Starceski v. Westinghouse Elec. Corp.,
54 F.3d 1089, 1096 n.4 (3d Cir. 1995). 
Under this Amixed motive@ model,
the employer does not escape liability altogether; rather the employer earns
only an affirmative defense on the question of Abut for@ cause or cause in fact.  Id.  (noting the interplay of Supreme Court
opinions and 1991 Congressional amendments to the Civil Rights Act in this
context).  In fact, the McDonnell
Douglas minuet is simply Ainapplicable where the plaintiff presents direct
evidence of discrimination.@  Trans World
Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).





[6]  Smith argues
that Russo limits her appeal to the claim that Smith discriminated against her
when it eliminated her position in 1999. 
Russo vigorously disputes this assertion.  The Texas Rules of Appellate Procedure
instruct us to construe briefing rules liberally.  See Tex.
R. App. P. 38.9.  In her initial
appellate brief, Russo averred that her 1998 job title change was motivated by
improper age discrimination, thereby rescuing the claim from waiver.  In that same document, she also lists both
the initial demotion and the termination as adverse employment actions.





[7]  Russo
testified that Aeverybody@ was
concerned about the impact declining sales might have on their jobs at Smith.