Sandy WALDMILLER, Appellant,

v.

CONTINENTAL EXPRESS, INC., Appellee.

No. 06–01–00072–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 27, 2002.

Decided March 28, 2002.

Gregg M. Rosenberg, Todd Slobin, Gregg M. Rosenberg & Associates, Houston, for appellant.

Robin E. Curtis, Continental Airlines, Louis K. Obdyke, Continental Express, Inc., Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Sandy Waldmiller sued Continental Express, Inc. (Continental) for age-related employment discrimination in violation of the Texas Commission on Human Rights Act (TCHRA). Continental successfully moved for summary judgment. Waldmiller appeals, contending that the trial court erred in granting summary judgment.

■ The TCHRA prohibits employment discrimination with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. *See* TEX. LAB.CODE ANN. §§ 21.001–.556 (Vernon 1996 & Supp.2002).[1] One of TCHRA's purposes is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." TEX. LAB.CODE ANN. § 21.001(1). Therefore, analogous federal statutes and the cases interpreting them guide our reading of the TCHRA. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001); *NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999).[2]

1. Texas Labor Code Section 21.051, which tracks the language of Title VII of the Civil Rights Act, *see* 42 U.S.C.A. § 2000e–2 (West 1994), reads:

 An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.
 TEX. LAB.CODE ANN. § 21.051 (Vernon 1996).

2. Federal decisions construing the Age Discrimination in Employment Act (ADEA) are

■ Federal courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. The first type is the "pretext" case, in which the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d at 476 (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The second type of case is the "mixed-motive" case, in which the plaintiff has direct evidence of discriminatory animus. This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095–99 (3d Cir.1995). Thus, how a case will be classified depends entirely on the presence or absence of direct evidence. *Price Waterhouse v. Hopkins,* 490 U.S. at 276, 109 S.Ct. 1775. If the plaintiff has only circumstantial evidence of discrimination, the case will be classified as a pretext case regardless of how many motives the employer had. *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d at 1097–98.

■ Both Waldmiller and Continental have correctly characterized this as a pretext case. The Supreme Court defined the order and allocation of proof for a pretext case in *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817, and *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. Initially, the complainant must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817. Although the precise elements of discrimination will vary depending on the allegations, *id.* at 802 n. 13, 93 S.Ct. 1817, the complainant's burden at this stage of the case "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. In our circumstances, a prima facie case will be considered as established if Waldmiller can show that: (1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated. *See Urbano v. Cont'l Airlines,* 138 F.3d 204, 206 (5th Cir.1998). The establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. To establish a presumption is to say that a finding of the prima facie case produces a required conclusion against the employer in the absence of an explanation. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Thus,

also of precedential value in cases such as this. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (applying the framework for pretext discrimination cases outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), within the context of an ADEA case).

once the plaintiff has established a prima facie case, a burden of production falls to the employer to articulate a legitimate, nondiscriminatory reason for any alleged unequal treatment. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742; *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. 1817. This burden is one of production, not persuasion; it can "involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 509, 113 S.Ct. 2742. If the employer satisfies this burden of production, the presumption of discrimination created by the plaintiff's prima facie showing is eliminated, *see Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. at 254, 101 S.Ct. 1089, and all that remains is the plaintiff's burden to persuade the fact-finder that the proffered reason was not the true reason for the employment decision and that the improper consideration—in this case, age—was the true reason. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 507–08, 113 S.Ct. 2742.

▇▇▇ The ultimate question is whether the employer intentionally discriminated against the employee. *Id.* at 511. Because proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. at 147, 120 S.Ct. 2097, the fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Id.; St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 511, 113 S.Ct. 2742. In other words, in appropriate circumstances, it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. at 147, 120 S.Ct. 2097. Consistent with this proposition, in a discrimination case, a plaintiff in Texas can defeat a summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the defendant's summary judgment evidence as failing to prove, as a matter of law, a legitimate, nondiscriminatory reason for the challenged employment action. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000).[3]

The propriety of summary judgment is a question of law. We review the trial court's summary judgment decision de

3. Continental argued in its motion for summary judgment, and continues to argue on appeal, that in order to defeat the summary judgment motion, Waldmiller must produce competent evidence (1) that creates a fact issue as to whether Continental's stated reasons were what actually motivated it; and (2) that creates a reasonable inference that discrimination was a determinative factor in the adverse employment action. This language describes the so-called pretext-plus standard, which was the Fifth Circuit standard prior to the Supreme Court decision in *Reeves. See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc); *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The "pretext-plus" standard of analysis requires a plaintiff not only to disprove an employer's proffered reasons for the discrimination, but also to introduce additional evidence of discrimination. *See Ratliff v. City of Gainesville,* 256 F.3d 355, 362 (5th Cir.2001) (citing *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 343 (6th Cir.1997)). In contrast, the "permissive pretext only" standard is a more lenient approach, and if the plaintiff establishes that the defendant's reasons are pretextual, the trier of fact is permitted, but not required, to render judgment for the plaintiff. *See id.* As the Fifth Circuit has most recently made perfectly clear, it no longer adheres to any pretext-plus requirement in light of the Supreme Court's decision in *Reeves. See Ratliff v. City of Gainesville,* 256 F.3d at 362.

novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

With the traditional motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). A defendant moving for summary judgment must negate at least one essential element of each of the plaintiff's theories of recovery, *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970), or plead and conclusively establish each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). If the moving party fails to meet its burden of proof, the nonmovant has no burden and the motion must fail. *See id.* If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex.1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant and any doubt resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d at 548–49.

 In a no-evidence motion for summary judgment, a party may move for summary judgment without being required to put forth any evidence of its own, on the ground there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). Thus, with the no-evidence mo-tion, the nonmovant rather than the mov-ant bears the burden to produce evidence of probative force to raise a fact issue on the material questions presented. *See Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). The motion must specifically state what elements of the claim or defense are lack-ing any evidentiary support. *See* TEX.R. CIV. P. 166a(i). As with a traditional sum-mary judgment motion, the court must consider all of the summary judgment evi-dence in the light most favorable to the nonmovant; every reasonable inference must be indulged in favor of the nonmov-ant and any doubt resolved in its favor. *See Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d at 70. A no-evidence challenge must be sustained when: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the oppo-site of the vital fact. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclu-sions.

 Continental's summary judg-ment motion referenced both the no-evi-dence and the traditional summary judgment standards without clearly dis-tinguishing between the evidence, argu-ments, and authorities supporting each. The trial court granted the motion with-out specifying the grounds. Where a judgment does not specify the ground or grounds on which it is granted, sum-mary judgment will be affirmed on ap-peal if any of the theories advanced in the motion for summary judgment is

meritorious. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995). Although the rules do not prohibit a hybrid traditional and no-evidence motion as long as fair notice of all allegations are given, the better practice is either to file two separate motions, one containing the no-evidence summary judgment and one containing the ordinary summary judgment, or to file one document containing both motions but with the arguments and authorities for each clearly delineated and separate from one another. *See Grant v. Southwestern Elec. Power Co.,* 20 S.W.3d 764, 768 (Tex.App.-Texarkana 2000, pet. granted). The substance of Continental's motion for summary judgment is that Waldmiller cannot produce sufficient evidence showing that she was qualified for the position, and thus she cannot establish her prima facie case, and she cannot produce sufficient evidence to create a fact issue regarding discrimination.

The relevant facts regarding Waldmiller's qualifications are as follows. Continental is a regional air carrier wholly owned by Continental Airlines, Inc. Waldmiller began to work for Continental as a flight attendant in June of 1994. In either March or April of 1998, Continental promoted Waldmiller, then forty-eight years of age, to the position of in-flight training manager. Continental hired Karen Miles to be Waldmiller's new supervisor on January 16, 1999, after having demoted Waldmiller's original supervisor. Approximately one month later, on February 18, 1999, Miles demoted Waldmiller to the position of flight attendant. Waldmiller had served as the in-flight training manager for less than one year. Continental's initial argument is that Waldmiller performed her duties so poorly that she had proved herself unqualified for the position.

As the in-flight training manager, Waldmiller was responsible for meeting with representatives from the Federal Aviation Administration (FAA) and for ensuring that the flight attendants' procedures and training were in compliance with FAA regulations. In order to effectuate such compliance, Waldmiller was charged with the responsibility for an in-flight manual that informed all flight attendants of pertinent FAA requirements. However, there were also other persons who were involved in the manual's revision process. It was Waldmiller's duty to update the manual by inserting alert bulletins into the manual that notified the flight attendants that the FAA was changing some aspect of the in-flight procedure, and to eventually replace these alert bulletins with more permanent and comprehensive revisions to the in-flight manual. Waldmiller was also charged with ensuring that all flight attendants stayed qualified for their positions; for hiring trainers; for the initial and recurrent training of flight attendants; and for crew communication resources.[4]

Although Miles had complaints about different aspects of Waldmiller's job performance, the primary reason Continental considered Waldmiller to have been deficient in her performance and therefore unqualified, was her alleged failure to maintain the in-flight manual. Miles' description of the events pertaining to the manual, leading up to Waldmiller's demotion, is as follows. She began her new position as Waldmiller's supervisor on Jan-

---

**4.** The deposition transcript makes reference to a job posting for Waldmiller's position. Waldmiller affirmed that this posting contained an accurate description of her job duties as in-flight training manager. Because this job posting, described as Deposition Exhibit No. 2, is nowhere to be found in the record, we must take our understanding of her job duties piecemeal from deposition testimony.

uary 16, 1999. The next day Miles met with an FAA representative, Glenn Hamilton, for two hours at Hamilton's request.[5] Miles took notes at this meeting. According to Miles, Hamilton had earmarked approximately sixty percent of the manual as containing inconsistencies and concerns related to regulations, outdated material, and poor planning. Hamilton told Miles that he had already met with Waldmiller and her group about two weeks earlier to discuss his concerns. Miles further testified that on the same day she met with Hamilton, she discussed the manual with Waldmiller. Waldmiller explained that Continental's in-house technical publisher, herself, and her department were going "back and forth" with a revision and had been doing so for some time, and that part of the reason for the delay was that Waldmiller felt that in-flight training was not a priority with the publisher. On February 4, Miles met with Waldmiller again and they discussed Waldmiller's job performance, particularly as it related to the manual. Apparently, this was a "warning meeting" at which Miles formed the opinion that it would be necessary to find someone other than Waldmiller who would make the revisions to the manual a priority. On February 18, 1999, Miles demoted Waldmiller to the position of flight attendant. According to Waldmiller, when she learned that she was being demoted, she asked Miles if there was any problem with her performance. Miles' reply was that there was no problem. She said she just did not like Waldmiller and did not want to work with her. Miles further stated that it was her department and she could do what she wanted.

Hamilton, the FAA representative, executed two affidavits, the second purporting to correct the first. Hamilton's first affidavit was produced by Waldmiller in re-

sponse to Continental's motion for summary judgment. Continental produced the second affidavit in reply to Waldmiller's response. Both affidavits state that Hamilton met with Waldmiller on January 22, 1999. At that time, they discussed issues of possible regulatory noncompliance and suggestions for improvement, and Hamilton reviewed an extensive revision to the in-flight manual, which Waldmiller advised him was in the process of completion as of that date. As noted, the two affidavits state different times for Hamilton's meeting with Miles. Miles had testified that she met with Hamilton on January 17.

Hamilton's first affidavit states that he met with Miles for the first time on April 6, 1999, in order to introduce himself and discuss the manual. He specifically pointed out in this affidavit that he had not met with Miles before April 6. That would place the meeting between Hamilton and Miles about two and one-half months after Waldmiller had been demoted. The affidavit further states that at that meeting, he informed Miles for the first time that the condition of the manual could be a possible violation of FAA regulations and that his office would like to see a revision completed within thirty days. Hamilton attached to this first affidavit a copy of his meeting notes supporting the information contained in his affidavit. If Hamilton's first affidavit is true, the unequivocal implication is that Miles' testimony is false. Hamilton's second affidavit does not state a specific date for his meeting with Miles. It states only that he met with Miles in her office during her first week on the job. In order to explain the corroborating meeting notes attached to the first affidavit, Hamilton stated in his second affidavit that the notes were not made contemporaneously and include information from his meeting

---

5. January 17, 1999, was a Sunday.

with Miles during her first week on the job.

Miles did testify that Hamilton was not the sole source of information on the deficiencies of the manual, but that she discussed the manual with others in her department. And as stated above, Continental alleges other instances of Waldmiller's employment deficiencies. Nevertheless, the alleged meeting between Miles and Hamilton is the primary support for Continental's reason for the demotion. Contrary to Continental's argument, Hamilton's second affidavit does not cancel or invalidate his first affidavit. One party obviously cannot amend an opposing party's supporting affidavit. What we have here is two sides, each producing an affidavit in conflict with the other side's version of the facts. This simply constitutes conflicting testimony, even though it is from the same person, and raises a conflict for the fact-finder to resolve.

We review the summary judgment evidence in the light most favorable to Waldmiller. Doing so, we find that a fact issue is demonstrated as to whether Waldmiller was qualified for her previous position. Furthermore, Waldmiller has produced evidence that raises a fact issue on whether Continental's proffered reason was the true reason for her demotion. As the Texas Supreme Court has stated, the fact-finder's disbelief of the reasons put forward by the defendant, particularly if the disbelief is accompanied by a suspicion of mendacity, may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 147, 120 S.Ct. 2097; *St. Mary's Honor Center v. Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. The motion for summary judgment was granted in error.

We reverse the judgment and remand the cause to the trial court for further proceedings.