Opinion issued November 4,
2010








 

 

 














            

                                                

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-08-00376-CV

____________

 

LOUATRICE
HENDERSON, Appellant

 

V.

 

THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,
Appellee

 

 



On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2006-34515








 

 



MEMORANDUM OPINION

 

          Appellant
has filed a motion for reconsideration en banc from this Court’s April 29, 2010
opinion.  In light of the motion, we
withdraw our opinion and judgment of April 29, 2010 and issue this opinion in
its stead.  We overrule the motion for
reconsideration en banc as moot.  See Brookshire Brothers, Inc. v. Smith,
176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on
reh’g) (noting that motion for en banc reconsideration becomes moot when new
opinion and judgment issue).

          This
is an employment discrimination case. 
Appellant Louatrice Henderson (“Henderson”) brought suit against the
University of Texas M.D. Anderson Cancer Center (“M.D. Anderson”), alleging age
and race–related employment discrimination in violation of the Texas Commission
on Human Rights Act (“TCHRA”).[2]  Without
specifying its grounds, the trial court granted summary judgment in favor of
M.D. Anderson.  We affirm.

 

I. 
Background

          Henderson
is a black female who worked for M.D. Anderson for approximately six years,
beginning in 1997.  She was 47-years-old
when last employed at the facility.  For
five years Henderson worked as the Staffing Representative for Human Resources
(“HR”) Recruitment.  Later, she obtained
employment in the HR Department on the Job Change Team.  The main purpose of the Job Change Team was
to identify and to assist M.D. Anderson employees wanting to transfer to
different jobs within the institution.

          Kelly
McDermott, a white female, became supervisor of the Job Change Team in August
2002.  Part of McDermott’s responsibility
was to evaluate Henderson’s job performance. 
In June 2003, McDermott evaluated Henderson’s overall job performance as
“substantially exceed[ing] expectations in most significant areas.”  In September, McDermott added a Caucasian
female, Beverly Poulter, to the Job Change Team.

          During
that same year, M.D. Anderson’s associate vice president for HR, Anne Speed,
took steps to improve the HR Department’s communication skills and its
efficiency.  She consolidated recruitment
work and selected Martha Jones, a black female, to be the Director of the HR
Recruiting Department.  Speed also began
implementing plans recommended by a consulting firm that the Job Change Team
and its positions be eliminated by April 2004.

          Between
November 2003 and March 2004, Henderson informally met with Jones approximately
three times.  Henderson alleges that
during these meetings, she complained to Jones that her immediate supervisor,
McDermott, was discriminating against her by giving Henderson’s co-worker,
Poulter, special projects, jobs, and responsibilities.  Henderson also claimed that McDermott had
instructed her on an occasion to “shut up.” 


          Jones
testified that she viewed the meetings with Henderson as instances when she
counseled Henderson concerning her job performance.  Jones characterized Henderson’s personality
as “defensive” and stated that Henderson lacked flexibility.  Jones allegedly told Henderson that she could
“lose her job” if she either did not like her job or reported McDermott’s
discriminatory treatment of her.  Jones
never relayed Henderson’s allegations of discrimination to McDermott or anyone
else.

          In
March 2004, the Job Change Team was informed that its members would have to
apply for positions under a new business model. 
Panel interviews of internal candidates for the new recruiter positions
occurred in April 2004.  Jones and two
other women conducted the interviews of the displaced members of the Job Change
Team, including Henderson, and gave the results to Speed.  The panel’s recommendations to Speed
addressed who they believed should be retained and who should be let go.  On April 19, 2004, everyone on the Job Change
Team, except Poulter, was laid off.  

          Subsequently,
Henderson filed a timely complaint with the Equal Employment Opportunity
Commission (EEOC) alleging age discrimination, race discrimination, and
retaliation.  The EEOC granted Henderson
the right to sue, and she filed suit in federal district court.  The federal district court dismissed
Henderson’s race-discrimination and unlawful-retaliation employment claims and
the U.S. District Court for the Fifth Circuit affirmed.  Henderson v. Univ. of Tex. M.D. Anderson Cancer
Ctr., No. H-06-569, 2007 WL 2913317 (S.D. Tex. July 25, 2007) (Hoyt, J.), aff’d, Henderson v. Univ. of Tex.
M.D. Anderson Cancer Ctr., 260 Fed. Appx. 741 (5th Cir. 2008) (Weiner,
Garza, and Benavides, JJ.) (per curiam) (affirming summary judgment).








          Henderson
then filed suit in state court, again claiming race and age discrimination and
retaliation in violation of the TCHRA. 
The trial court granted M.D. Anderson’s motion for summary judgment.  On appeal, Henderson contends that the trial
court erred in granting appellee’s motion for summary judgment because (1)
there is a disputed fact issue with regard to whether Henderson can prove
pretext about two positions she sought under the reorganization, (2) the court
failed to consider the evidence in the record, the standard of review, and
prevailing case law in reaching its decision, (3) the court erred in concluding
Henderson did not establish a claim for retaliation, and (4) the court erred in
sustaining M.D. Anderson’s objection regarding the admissibility of the EEOC
determination letter. 

 

II. 
Standard of Review

            M.D. Anderson moved for summary
judgment under rule 166a of the Texas Rules of Civil Procedure.  To prevail on a traditional motion for
summary judgment under rule 166a, the party moving for summary judgment carries
the burden of establishing that no material fact issue exists on the challenged
elements and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a; M.D. Anderson Hosp. & Tumor Inst. v. Willrich,
28 S.W.3d 22, 23 (Tex. 2000).  We review
summary judgments de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  And, when a trial court’s order granting
summary judgment does not specify the grounds on which it relied, as is the
case here, we must affirm summary judgment if any of the summary judgment
grounds are meritorious.  FM
Prop.  Operating Co. v. City of Austin,
22 S.W.3d 868, 872–73 (Tex. 2000). 

III. 
Discussion

A.      Texas
Law and McDonnell Douglas

          Like
its federal counterpart, the TCHRA expressly prohibits employment
discrimination with respect to race, color, disability, religion, sex, national
origin, or age.  Tex. Lab. Code Ann. § 21.051 (Vernon 2006).  The Texas Legislature envisioned that the
TCHRA would provide for “the execution of the policies of Title VII of the
Civil Rights Act of 1964 and its subsequent amendments.”  Id. § 21.001(1); see also Griggs v.
Duke Power Co., 401 U.S. 424, 431, 91 S. Ct. 849 (1971) (“What is required
by Congress is the removal of artificial, arbitrary, and unnecessary barriers
to employment when the barriers operate invidiously to discriminate on the
basis of racial or other impermissible classification.”).  Accordingly, Texas state courts follow
analogous federal statutes and cases interpreting them to guide our reading of
TCHRA.  See Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 476 (Tex. 2001). 
Section 21.051 of the TCHRA provides:

An employer commits an unlawful employment practice if
because of race, color, disability, religion, sex, national origin, or age the
employer:

 








(1) fails or refuses to hire an individual, discharges
an individual, or discriminates in any other manner against an individual in
connection with compensation or the terms, conditions, or privileges of
employment; or

 

(2) limits, segregates, or classifies an employee or
applicant for employment in a manner that would deprive or tend to deprive an
individual of any employment opportunity or adversely affect in any other
manner the status of an employee.

 

Tex. Lab.
Code Ann. § 21.051
(Vernon 2006).

          In
McDonnell Douglas Corp. v. Green, the Supreme Court allocated the burden
of production and ordered the presentation of proof in employment
discrimination cases.  411 U.S. 792,
802–05, 93 S. Ct. 1817 (1973).  Texas
courts invoke McDonnell Douglas in
employment discrimination cases brought under state law.  See Quantum, 47 S.W.3d at 476; M.D.
Anderson Hosp., 28 S.W.3d at 24; Waldmiller v. Continental Express, Inc.,
74 S.W.3d 116, 122–23 (Tex. App.—Texarkana 2002, no pet.).

          The
U.S. Supreme Court has summarized the allocation of proof in employment
discrimination cases as follows:

First, the plaintiff has the burden of proving by the
preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving
the prima facie case, the burden shifts to the defendant to articulate some
legitimate, nondiscriminatory reason for the employee’s rejection.  Third, should the defendant carry this
burden, the plaintiff must then have an opportunity to prove by a preponderance
of the evidence that the legitimate reasons offered by the defendant were not
its true reasons, but were a pretext for discrimination.

 

Texas Dept. of Cmty. Affairs v.
Burdine, 450 U.S.
248, 252–53, 101 S. Ct. 1089 (1981) (citations omitted); see also Quantum,
47 S.W.3d at 476 (applying McDonnell Douglas in TCHRA age discrimination
case).  Because direct evidence of
discrimination is a rarity in employment cases, Henderson puts forth only
circumstantial evidence that M.D. Anderson violated the TCHRA.  See Tyler v. Union Oil Co. of California,
304 F.3d 379, 393 (5th Cir. 2002) (“The McDonnell Douglas evidentiary
framework is primarily concerned with the plaintiff’s initial burden when
attempting to prove discrimination by circumstantial evidence.”).  Thus, without direct evidence of
discrimination, this case merits the McDonnell Douglas “pretext”
analysis.  Quantum, 47 S.W.3d at
476.[3]

B.      Estoppel

          As
an initial matter, on appeal Henderson asserts claims based on race and age
discrimination, as well as unlawful retaliation.  However, M.D. Anderson asserts that
Henderson’s state court petition sets forth claims based on age discrimination
and unlawful retaliation only, therefore we should not address her claims of
race discrimination.  M.D. Anderson also
contends that collateral estoppel should bar our consideration of Henderson’s
retaliation claim.  

          It
is unnecessary for us to resolve the merits of whether Henderson’s state court petition
sets forth a claim of race discrimination, because, assuming it does, we agree
with M.D. Anderson that such a claim would be barred by the principal of
collateral estoppel.  As we have previously explained,
Texas state courts follow analogous federal statutes and cases interpreting
them to guide our reading of TCHRA.  See
Quantum, 47 S.W.3d at 476; see also Wal-Mart Stores, Inc. v.
Canchola, 121 S.W.3d 735, 739 (Tex. 2003) (“In discrimination cases that
have not been fully tried on the merits, we apply the burden-shifting analysis
established by the United States Supreme Court.”).  In 2007, the U.S. District Court dismissed
Henderson’s race discrimination and unlawful retaliation claims under the
applicable prima facie and burden-shifting tests.  Henderson, 2007 WL 2913317.  Subsequently, the U.S. Court of Appeals for
the Fifth Circuit affirmed.  Henderson,
260 Fed. Appx.
741.

          M.D.
Anderson cites James v. City of Houston in support of its assertion that
collateral estoppel should bar our consideration of Henderson’s race discrimination
and retaliation claims.  138 S.W.3d 433
(Tex. App.—Houston [14th Dist.] 2004, no pet.). 
There, the Fourteenth Court of Appeals applied collateral estoppel to
affirm the state district court’s grant of summary judgment for the City of
Houston.  After losing his due process
claim in federal court, under federal law, James brought an identical due
process claim in state court.  The
Fourteenth Court opined, “[a]t issue is whether James is barred by the doctrine
of collateral estoppel from asserting his state-law claims when his parallel
federal-law claims were dismissed in a separate proceeding in federal
court.”  James, 138 S.W.3d at 434.  The court concluded that because the
procedural due process protections provided under the Texas Constitution mirror
those provided under the federal Constitution, the plaintiff was barred from
raising his due process claim in state court. 
Id. at 439.

          We
are persuaded by the reasoning of the James court and find it applicable
to Henderson’s race discrimination and retaliation claims.  Because the Texas Supreme Court has
determined that the protections provided under TCHRA mirror those provided
under the analogous federal statutes, the order of the federal district court
granting M.D. Anderson’s motion for summary judgment and the Fifth Circuit’s
affirmance of such order precludes a contrary finding in the instant case.  See Quantum, 47 S.W.3d at 476; see
also Canchola, 121 S.W.3d at 739. 
Therefore, having determined that Henderson’s race discrimination and
retaliation claims are barred by the doctrine of collateral estoppel, we will
consider only Henderson’s age-based discrimination claims.

 

C.      Henderson’s
Prima Facie Case        








          Henderson
must first establish a prima facie case for her discrimination claims.  The establishment of the prima facie case is
a “condition precedent” to the pretext analysis.  See Jones v. Union Pac. R.R. Co., 302
F.3d 735, 741 (5th Cir. 2002).  Henderson
need only make a minimal showing to establish her prima facie case.  See Gold v. Exxon Corp., 960 S.W.2d
378, 382 (Tex. App.—Houston [14th Dist.] 1998, no pet.); see also Burdine,
450 U.S. at 523, 101 S. Ct. 1089 (noting that the plaintiff’s burden at this
stage is “not onerous”).

          In
employment discrimination cases based on circumstantial evidence, the
plaintiff’s prima facie case relates to the employee’s burden of presenting
evidence that raises an inference of discrimination.  See Swierkiewicz v. Sorema N.A., 534
U.S. 506, 122 S. Ct. 992, 997 (2002).  A
prima facie case of age discrimination requires proof that the plaintiff (1) is
a member of a protected class; (2) was discharged; (3) was qualified for the
position from which she was discharged; and (4) was either replaced by someone
outside the protected class, replaced by someone younger, or was otherwise
discharged because of her age.  See
Baker v. Gregg County, 33 S.W.3d 72, 80 (Tex. App.—Texarkana 2000, pet.
dism’d).  








          As
Henderson was 47 years old at the time of her reassignment and subsequent
firing, she falls within the relevant protected class, thereby meeting the
first element of the prima facie case.  See
Tex. Lab. Code Ann. § 21.101
(Vernon 1996) (limiting protection against age discrimination under the TCHRA
to individuals who are forty years of age or older); cf. 29 U.S.C. § 631(a) (West 2009) (Age Discrimination in
Employment Act protects individuals who are at least forty years of age).  M.D. Anderson’s decision to terminate
Henderson constituted an adverse employment action. See Baker, 33 S.W.3d
at 80.  Thus, she meets the second
required element.  With regard to the
third element, the record indicates that less than a year before the
restructuring, McDermott evaluated Henderson’s overall job performance as
“substantially exceed[ing] expectations in most significant areas.”  Moreover, with regard to the HR position that
Henderson sought, the record indicates that Henderson had held a similar job
previously.  Finally, with regard to the
fourth element, the evidence indicates that no person over 40-years-old was
interviewed or offered the HR position.  

          From
the summary judgment evidence in the record, we find that Henderson met all of
the elements of her prima facie case on the age-discrimination claim.

D.      M.D.
Anderson’s Articulated Nondiscriminatory Reasons

          As
Henderson has met the elements of her prima facie case, the burden shifted to
M.D. Anderson to articulate legitimate nondiscriminatory reasons for
Henderson’s termination.  See Quantum,
47 S.W.3d at 477.  The burden is one of
production only, not persuasion.  See
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct.
2097 (2000).  In promulgating its
nondiscriminatory reason, the employer quickly and easily rebuts the
presumption of discrimination, which summarily drops from the case.  See Costa v. Desert Palace, Inc., 299
F.3d 838, 855 (9th Cir. 2002); see also Pilditch v. Bd. of Educ. of the City
of Chicago, 3 F. 3d 1113, 1117 (7th Cir. 1993) (“[T]he employer need not
persuade the court that he was actually motivated by the reason he gives and
the mere articulation of the reason rebuts the prima facie case and puts the
onus back on the plaintiff to prove pretext.”). 
Through the testimony of Speed, M.D. Anderson proffered
nondiscriminatory reasons for Henderson’s termination.  First, M.D. Anderson claims it was motivated
in implementing changes due to complaints and comments made to Speed by M.D.
Anderson employees shortly after she started working there in 2002, and second,
a consultant’s “Strategic Recruitment Review” report, which recommended
eliminating Henderson’s position.  The
Report identified “deficiencies” in areas including customer service,
institutional perception, strategy, measurement, process management, and role
definition.  The purpose of the report
was to help “change the recruitment department from a largely administrative
function to one that is truly a business partner to their clients,” so as to
improve areas like the “manager satisfaction level” and department
efficiency.  

          Agency
restructuring is a legitimate, nondiscriminatory reason for an employee’s
termination.  Burdine, 450 U.S. at
254, 101 S. Ct. 1089.  M.D. Anderson’s
production of this legitimate nondiscriminatory reason eliminates the
presumption of discrimination created by the plaintiff’s prima facie
showing.  Quantum, 47 S.W.3d at
477.  Under the McDonnell Douglas framework, the burden shifts back to Henderson to
call into question M.D. Anderson’s articulated reason.

E.      Establishing
Pretext for Discrimination

In Reeves v. Sanderson Plumbing
Products, Inc., the U.S. Supreme Court 

clarified that when the plaintiff
offers proof that the employer’s articulated reasons are false, the dispute
must then be submitted to a jury to decide. 
530 U.S. 133, 144–46, 120 S. Ct. 2097, 2107–2108 (2000).  Under Reeves, the plaintiff shows
pretext by introducing evidence proving the reasons stated by the employer were
not its true reasons, but were a pretext for discrimination or that said
reasons were unworthy of credence.  530 U.S.
at 143, 120 S. Ct. 2097.  In the summary
judgment setting, however, the plaintiff need not prove pretext but merely
establish a genuine issue of material fact on the matter.  See Amburgey v. Corhart Refractories
Corp., Inc., 936 F.2d 805, 813 (5th Cir. 1991).  Summary judgment will be improper if the
plaintiff makes a prima facie case and produces sufficient evidence for a jury
to disbelieve the employer’s stated reason for discharge.  See Reeves, 530 U.S. at 146–48, 120 S.
Ct. 2097, 2108–2109.  However, the Court
did state that “an employer would be entitled to judgment as a matter of law if
the record conclusively revealed some other, nondiscriminatory reason for the
employer’s decision, or if the plaintiff created only a weak issue of fact as
to whether the employer’s reason was untrue and there was abundant and
uncontroverted independent evidence that no discrimination had occurred.”  Id. at 148, 120 S. Ct. 2097, 2109.  Thus, we analyze this step of the McDonnell
Douglas inquiry in light of Reeves.

          M.D.
Anderson claims it eliminated Henderson’s job because of departmental
restructuring.  M.D. Anderson is entitled
to reduce its force and structurally reorganize its operations to maximize
efficiency, but an employer may not intentionally discriminate against an
employee because of her age.  Gallo v.
Prudential Residential Svs., Ltd., 22 F.3d 1219, 1225 (2d Cir. 1994).  

          To
show pretext in a restructuring case, an employee must establish that an
improper motive “tipped the balance” in favor of termination.  Krchnavy v. Limagrain Genetics Corp.,
294 F.3d 871, 876 (7th Cir. 2002).  Bald
assertions of impermissible age discrimination are insufficient to establish
pretext.  See Amburgey, 936 F.2d
at 814.  Here, Henderson failed to
provide any evidence from which one could reasonably conclude that the
restructuring and reduction was anything but bona-fide.  

          M.D.
Anderson, through the testimony of Speed, proffered legitimate reasons that
distinguished the successful position applicants from Henderson.  A chart summary of the interview assessment
upon which Speed relied, in part, in making final decisions about the job
offers shows that Henderson received an assessment of two out of four “points”
in answering questions on the topics that the panel covered with her and the
other applicants.  The summary states
that the panel assessed Henderson’s interview performance as a three.  

          Panel
member Jones testified that Henderson did not interview as well as some of the
other staff with respect to recruitment questions and recruitment techniques
and that she scored lower than the other applicants on each of the categories
covered in the interview.  Likewise,
panel member Brown testified that she remembered that she “generally scored other
applicants higher than I scored Ms. Henderson.” 
Finally, Speed stated that her reason for declining to offer Henderson
the positions she sought under the restructuring “resulted from my belief that
the applicants hired into the recruiter positions stood the best chance of
succeeding in the positions and would contribute more to M.D. Anderson in the
roles offered them, when compared with Ms. Henderson and the facts of her
candidacy.”

          To
rebut M.D. Anderson’s nondiscriminatory reasons, Henderson must show she was
“clearly better qualified” than the applicants who were retained.  See Nichols v. Loral Vought Sys. Corp.,
81 F.3d 38, 42 (5th Cir. 1996).  The
evidence of relative qualifications must be more than merely subjective and
speculative.  Id.  It must be specific and comparative in nature.  Bodenheimer v. PPG Indus., Inc., 5
F.3d 955, 959 (5th Cir. 1993).  

          With
respect to the Candidate Recruiter position, Henderson alleges that she was
“clearly better qualified” than Stephanie Perez, a 31-year-old Caucasian woman,
Beverly Poulter, a 29-year-old Caucasian woman, and Sadia Jalali, a 25-year-old
woman of Pacific Island descent, in terms of experience.  Henderson also alleges that she was clearly
better qualified than Dana Stover, a 35-year-old Caucasian woman who had been
employed exclusively as a recruiter while working for M.D. Anderson before the
2004 reorganization and hiring process, as well as earlier in her career.  Henderson asserts that Stover interviewed
poorly and was subsequently terminated for unsatisfactory performance.

          Upon
review of the record, we cannot conclude that Henderson’s claim that she was
clearly better qualified than Perez, Poulter, and Jalali is more than a
subjective and speculative assertion.  Nichols,
81 F.3d at 42.  Henderson states that she
is more experienced than these three candidates, but does not explain with any
specificity how she is more experienced. 
Likewise, with regard to Stover, Henderson makes the non-specific
assertion that Stover “interviewed poorly,” but does not provide comparative
evidence of Stover’s relative qualifications. 
Bodenheimer, 5 F.3d at 959. 
Additionally, the fact that Stover was subsequently terminated has no
bearing on M.D. Anderson’s decision making process during the reorganization
and hiring process.  

          With
respect to the HR position, Henderson states that she was “clearly better
qualified” than Deborah Becerra, a 26-year-old Hispanic woman who was offered
an HR position.  Supporting Henderson’s
contention is the fact that Henderson scored a “four” in the experience category
used by the interviewing panel, while Becerra scored a “3.8.”  Both women have bachelor’s degrees.  However, the record reveals that Becerra is
bilingual, while Henderson is not.  Henderson
also claims that one younger applicant, Jennifer Cazaraz, did not meet the
basic experience requirement for the HR position.

          Again,
Henderson fails to explain with any specificity how she is clearly better
qualified than Becerra, or to discuss or elaborate on how her experience
compared to that of Cazaras.  Bodenheimer,
5 F.3d at 959.  Moreover, M.D. Anderson,
through the testimony of Speed, explained that the organization needed an
individual who spoke both Spanish and English to accommodate Spanish-speaking
applicants and telephone inquiries, which was the basis for its decision to
offer Becerra a position.   

          Henderson
has presented this court with her disagreement with M.D. Anderson’s decision
but not with sufficient evidence to raise a fact issue that she was clearly
better qualified for the Candidate Recruiter and Human Resources Assistant
positions.  See Waggoner v. City of
Garland, 987 F.2d 1160, 1165 (5th Cir. 1993) (“The ADEA was not intended to
be a vehicle for judicial second-guessing of business decisions, nor was it
intended to transform the courts into personnel managers.”).








          Here,
the record supports M.D. Anderson’s contention that its decision to retain
applicants rather than her was necessitated by legitimate business
decisions.  Henderson thus failed to
raise a fact issue rebutting M.D. Anderson’s nondiscrimination reason for her
termination.  See Anderson v. Taylor
Pub. Co., 13 S.W.3d 56, 59–60 (Tex. App.—Dallas 2000, pet. denied); cf.
Bowen v. El Paso Elec. Co., 49 S.W.3d 902, 909–911 (Tex. App.—El Paso 2001,
pet. denied).  As the plaintiff has not
produced sufficient evidence for a jury to disbelieve the employer’s stated
reasons, the trial court properly granted summary judgment in favor of M.D.
Anderson on the termination claim.  See
Reeves, 530 U.S. at 148, 120 S. Ct. 2097. 
Henderson’s first, second, third, and fourth points of error are
overruled. 

F.      EEOC Determination Letter

          In
her fifth point of error, Henderson argues that the trial court erred in
sustaining M.D. Anderson’s objection regarding the admissibility of an EEOC
determination letter submitted by Henderson.

          Evidentiary rulings are committed to
the trial court’s sound discretion.  Bay
Area Healthcare Gr., Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007).  We review a trial court’s decision to admit
or to exclude evidence for an abuse of that discretion.  In re J.P.B., 180 S.W.3d 570, 575
(Tex. 2005).  A trial court abuses its
discretion when it acts without reference to any guiding rules or
principles.  Garcia v. Martinez,
988 S.W.2d 219, 222 (Tex. 1999).  We must
uphold the trial court’s evidentiary ruling if there is any legitimate basis
for the ruling.  Owens-Corning
Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Oyster Creek
Fin.Corp. v. Richwood Invs. II, Inc., 176 S.W.3d 307, 317 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied).

          M.D.
Anderson argued before the trial court that the EEOC determination was not
valid, and therefore irrelevant, because it failed to take into account any
data about the ages of the self-selected pool of people who applied for
recruiter or other positions under the department reorganization, and because
it omitted other relevant data, including the identity of applicants who were
offered positions but declined them.  

          Given
this legitimate basis for the trial court’s ruling, and based on our review of
the record, we find no evidence supporting Henderson’s claim that the trial
court acted in an arbitrary or unreasonable manner in failing to admit the EEOC
determination letter.  Therefore,
Henderson’s fifth point of error is overruled.

Conclusion

          Henderson
presented no evidence sufficient to rebut the legitimate non-discriminatory
reasons offered by M.D. Anderson on her termination claim.  Accordingly, we hold that the trial court did
not err in granting M.D. Anderson’s motion for summary judgment.  We overrule Henderson’s points of error and
affirm the judgment of the trial court.

 

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice

                                                                   

 

Panel consists of Chief Justice Radack and Justices
Bland and Massengale.

 

 

 











[2]  See Tex. Lab. Code
Ann. § 21.001 et seq. (Vernon 2006).





[3]              Federal courts
allocate the various burdens depending on whether the plaintiff presents direct
or circumstantial evidence of discrimination. 
While courts invoke the “pretext” model when the plaintiff presents circumstantial
evidence, they use the “mixed motive” model when the plaintiff brings forth
direct evidence.  When a plaintiff
produces direct evidence of the employer’s discriminatory intent, the employer
must then produce evidence sufficient to show that it would have made the same
decision if illegal bias had played no role in the employment decision.  Starceski v. Westinghouse Elec. Corp.,
54 F.3d 1089, 1096 n.4 (3d Cir. 1995). 
Under this “mixed motive” model, the employer does not escape liability
altogether; rather the employer earns only an affirmative defense on the
question of “but for” cause or cause in fact. 
Id. (noting the interplay of Supreme Court opinions and 1991
Congressional amendments to the Civil Rights Act in this context).  In fact, McDonnell Douglas is simply
“inapplicable where the plaintiff presents direct evidence of
discrimination.”  Trans World
Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S. Ct. 613 (1985).